UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

AKINYELE C.,[1]

        Plaintiff,

v.                                                    Civil No. 4:22cv62

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

        Defendant.

## OPINION AND ORDER

Akinyele C. ("Plaintiff"), with the assistance of counsel, brought this action seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") to deny his claim for disability benefits and supplemental security income benefits under the Social Security Act. Before the Court are: (1) the parties' cross-motions for summary judgment; (2) the Report and Recommendation (the "R&R") of the United States Magistrate Judge; (3) Plaintiff's objections to the R&R; and (4) the Commissioner's response to Plaintiff's objections. For the reasons set forth below, the Court **ADOPTS** the R&R, ECF No. 21; **DENIES** Plaintiff's motion for summary judgment,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts use only the first name and last initial of any non-government parties in Social Security cases due to privacy concerns endemic to such cases.

ECF No. 13; **GRANTS** the Commissioner's motion for summary judgment, ECF No. 19; and **AFFIRMS** the final decision of the Commissioner.

## I. Procedural Background

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, this matter was referred to a United States Magistrate Judge for an R&R. On January 27, 2023, the assigned Magistrate Judge issued a detailed R&R recommending that Plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the final decision of the Commissioner be affirmed. ECF No. 21. By copy of the R&R, each party was advised of the right to file written objections to the findings and recommendations made by the Magistrate Judge. Plaintiff filed objections to the Report and Recommendation on February 10, 2023, ECF No. 22, and the Commissioner filed a response to Plaintiff's objections on February 23, 2023, ECF No. 23.

## II. Legal Standard

Under Rule 72(b)(3) of the Federal Rules of Civil Procedure, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In situations where no proper objection is made, the district court need only review the report and recommendation for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

In reviewing a final administrative decision, a district court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (alteration in original) (citation omitted). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Stated another way, substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citation omitted). Further, it is not the place of the reviewing court to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Id. (first alteration in original).

### III. Applicable Regulations

Pursuant to 20 C.F.R. § 404.1520(a), an ALJ is required to follow a "five-step sequential evaluation process" when analyzing a claim of disability. Those steps require the ALJ to address: (1) whether the claimant is engaged in substantial gainful activity; (2) the severity of the claimant's medically determinable physical and mental impairments; (3) whether the claimant has an impairment that meets or equals one of the Social Security Administration's listings of official impairments;

3

(4) whether an impairment prevents the claimant from performing any past relevant work in light of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can adjust to employment other than past relevant work in light of the claimant's RFC, age, education, and work experience. Id.

When evaluating a claimant's asserted mental impairments, the ALJ is required to employ the "special technique" set forth in 20 C.F.R. § 404.1520a. This technique requires the ALJ to "rate the degree of functional limitation resulting from [any medically determinable mental] impairment(s)" in "four broad functional areas . . . : Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(b)(2), (c)(3). Limitations in these functional areas are rated on a five-point scale: none, mild, moderate, marked, or extreme. Id. § 404.1520a(c)(4). Using these ratings, the ALJ then "determine[s] the severity of [the claimant's] mental impairment(s)." Id. § 404.1520a(d). Typically, impairments are not found to be severe where the limitations are rated as "none" or "mild." Id. If the claimant has one or more severe mental impairments, the ALJ will "determine if [any impairment] meets or is equivalent in severity to a listed mental disorder," and, if not, the ALJ "will then assess [the claimant's] residual functional capacity." Id.

4

## IV. Discussion

Plaintiff offers two objections to the R&R. First, Plaintiff argues that the Magistrate Judge erred in concluding that the ALJ properly considered Plaintiff's mental health limitations in determining his RFC. ECF No. 22, at 2. Second, Plaintiff argues that the Magistrate Judge also erred in concluding that the ALJ properly evaluated the medical opinion of Plaintiff's psychiatric treating provider Jennifer Morrison, PA-C. Id. at 6. The Court addresses each of these objections in turn.[2]

### A. Consideration of Mental Health Limitations in the RFC

In his motion for summary judgment, Plaintiff argued that the ALJ — after concluding that Plaintiff suffered from a moderate limitation in his ability to adapt or manage himself[3] — failed to account for this limitation when crafting the RFC. ECF No. 14, at 7. However, the Magistrate Judge concluded in the R&R that "the restrictions in the RFC do account, to some degree, for a limited ability to adapt and manage oneself." ECF No. 21, at 29 (emphasis in original). Plaintiff now argues that the Magistrate Judge's conclusion is "not consistent with the regulations' definition of

---

[2] The Court has reviewed the remainder of the analysis in the R&R under a clear error standard and finds that no clear error was committed.

[3] "Examples [of abilities in this functional area] include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(4).

this functional area," and that, contrary to the Magistrate Judge's finding, the ALJ failed to explain sufficiently how the RFC "accommodates Plaintiff's moderate ability to adapt or manage oneself." ECF No. 22, at 3-4. In particular, Plaintiff challenges the Magistrate Judge's acceptance of the ALJ's explanation that the RFC "provided for moderate limits in adaptation in light of the claimant's testimony regarding his functioning level at home." ECF No. 21, at 29 (quoting R. 32).

After reviewing the relevant portions of the record de novo, the Court finds that the Magistrate Judge did not err in concluding that the ALJ appropriately accounted for Plaintiff's mental health limitations in crafting the RFC. As an initial matter, there is no "categorical rule" that an ALJ's finding of a moderate impairment at steps 2 and 3 requires a corresponding "limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). If, for example, an ALJ determines that a moderate "limitation does not affect [the claimant]'s ability to work, . . . it would [be] appropriate" to omit the limitation from the RFC, as long as the ALJ sufficiently explains that analysis. Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). Here, the ALJ thoroughly explained her RFC analysis, including providing an extensive discussion of the key record evidence and clear reasoning regarding the extent of the restrictions incorporated in the RFC. R. 27-32. Even if none of the restrictions in the RFC corresponded

6

to Plaintiff's adaptation limitation, the ALJ's discussion sufficiently supports and explains her conclusions regarding the appropriate RFC.

Regardless, the ALJ in fact did include restrictions in the RFC that address Plaintiff's moderate adaptation limitation (as well as Plaintiff's other mental limitations). As the Magistrate Judge observed, "in discussing the reasoning behind her RFC determination, the ALJ explained that the RFC 'provided for moderate limits in adaptation in light of the claimant's testimony regarding his functioning level at home.'"[4] ECF No. 21, at 29 (quoting R. 32). Despite Plaintiff's arguments to the contrary, a claimant's functioning at home, including his ability to see to his personal hygiene, household chores, and other needs, is regularly used as a basis for assessing the severity of a claimant's limitation in adapting or managing himself and the need for any corresponding RFC restriction. See, e.g., Lori A. J. v. Kijakazi, No. 2:22cv131, 2023 WL 3069394, at *8 (E.D. Va. Apr. 5, 2023), report and recommendation adopted, 2023 WL 3060789 (E.D.

---

[4] This statement follows from the ALJ's earlier discussion of the adaptation limitation:
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reported performing minimal household chores, but not an inability to perform tasks. He could clean up his room and cook a little. He did not report any problems with toileting or fee[d]ing. (Testimony). In July and November 2020, the claimant told PA Morrison that [he] tried to exercise regularly. (5F, pg. 2; 7F, pg. 18). The undersigned finds moderate limits in this domain.

R. 26.

7

Va. Apr. 24, 2023); Marie H. v. Kijakazi, No. 3:20cv924, 2022 WL 3702920, at *6 (E.D. Va. May 5, 2022), report and recommendation adopted, 2022 WL 3702088 (E.D. Va. Aug. 26, 2022); Suarez v. Berryhill, No. 3:18cv128, 2019 WL 959606, at *7 (E.D. Va. Jan. 28, 2019), report and recommendation adopted, 2019 WL 943389 (E.D. Va. Feb. 26, 2019).

As crafted by the ALJ, the RFC restricts Plaintiff to "simple, repetitive nonproduction pace tasks, with occasional interaction with coworkers, supervisors and the public." R. 27. These restrictions are consistent with Plaintiff's moderate limitation in his ability to adapt or manage himself.[5] See, e.g., Stevens v. Comm'r of Soc. Sec., 2020 WL 1324497, at *11 (E.D. Cal. Mar. 20, 2020) ("Courts have determined that restrictions such as . . . limiting a claimant to simple, routine tasks with limitations on interactions with coworkers and the public [] are consistent with 'marked' limitations in adaption identified at step two." (citing Hill v. Comm'r of Soc. Sec., 2020 WL 836386 *4-5 (W.D.N.Y. Feb. 20, 2020); Self v. Berryhill, 2019 WL 825772, *5 (M.D.N.C. Feb.

---

[5] As the Magistrate Judge noted, ECF No. 21, at 28, Plaintiff seems to believe that his RFC cannot account for his moderate adaptation limitation because the RFC's two restrictions ("simple, repetitive nonproduction pace tasks" and "occasional interaction with coworkers, supervisors, and the public") correspond, respectively, with his moderate limitations in concentrating, persisting, and maintaining pace and in interacting with others. However, the question is whether the RFC restrictions address Plaintiff's limitation in adapting or managing himself, which they do. The appropriateness of the restrictions for addressing Plaintiff's adaptation limitation is not diminished merely because the restrictions also address his other mental impairments.

8

21, 2019))); Watts v. Saul, 2021 WL 742888, at *13 (N.D. Tex. Jan. 11, 2021), report and recommendation adopted, 2021 WL 734415 (N.D. Tex. Feb. 25, 2021) (finding that "the ALJ's mental RFC determination limiting [the claimant] to the performance of detailed but not complex work and social restrictions reasonably incorporated into the RFC [the claimant's] moderate limitation" in the ability to adapt or manage oneself).

Thus, the Magistrate Judge did not err in "conclud[ing] that the ALJ appropriately considered Plaintiff's mental health impairments." ECF No. 21, at 30. For the reasons explained above and in the R&R, id., substantial evidence supports the ALJ's RFC determination, and it is not for this Court to reweigh the evidence or to substitute its judgment for that of the ALJ. Mastro, 270 F.3d at 176. Therefore, the Court overrules Plaintiff's objection regarding the ALJ's consideration of Plaintiff's mental health limitations.

### B. Evaluation of PA-C Morrison's Opinion

Plaintiff also objects to the Magistrate Judge's determination that the ALJ appropriately evaluated the medical opinion of Plaintiff's treating provider, PA-C Morrison. In her medical source statement, PA-C Morrison opined, in relevant part, that Plaintiff has "marked" impairments in five areas (carrying out short or simple instructions; getting along with the general public; getting along with co-workers; getting along with

9

supervisors; and responding to changes in routine) and "extreme" impairments in the remaining three areas (maintaining concentration or focus; performing at a consistent pace; and dealing with normal work stress). R. 465.

For disability claims filed on or after March 27, 2017 (such as Plaintiff's), an ALJ will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including the opinion of a claimant's treating provider. 20 C.F.R. § 404.1520c(a). Instead, when assessing any medical opinion, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors (including "familiarity with other evidence in a claim"). Id. § 404.1520c(c). Although an ALJ must consider all of the factors, she need only specifically articulate her assessment of the supportability and consistency factors. Id. § 404.1520c(b)(2). Supportability refers to how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[.]" Id. § 404.1520c(c)(1). Consistency refers to how "consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim[.]" Id. § 404.1520c(c)(2).

Plaintiff argues that the ALJ's evaluation of PA-C Morrison's opinion "lacks the required articulation" of the supportability

10

and consistency factors, failing to "explain how [those] factors were considered in the determination or decision." ECF No. 22, at 6-7 (citation omitted). Plaintiff further asserts that the ALJ "mischaracterize[ed] Ms. Morrison's records" by finding that the records "showed an intact memory and average IQ and fund of knowledge, when in fact the records often showed the opposite," and that the Magistrate Judge similarly "ignor[ed] the favorable evidence" in concluding that the ALJ's opinion was supported by substantial evidence. ECF No. 22, at 6-7 (cleaned up).[6] Based on the Court's de novo review of the relevant portions of the record, the Court agrees with the Magistrate Judge that the "ALJ properly evaluated the medical opinion from Plaintiff's psychiatric treating provider" and that the ALJ's decision is supported by substantial evidence. ECF No. 21, at 31, 37.

Notwithstanding Plaintiff's arguments to the contrary, the ALJ sufficiently addressed both supportability and consistency in

---

[6] Plaintiff also takes issue with what he describes as "the Magistrate Judge's argument that this Court is without authority to disturb the ALJ's decision." ECF No. 22, at 8. But the Magistrate Judge merely observed — correctly — that the Court must defer to the ALJ's factual findings where conflicting evidence would allow reasonable minds to differ. ECF No. 21, at 37; see Biestek v. Berryhill, 139 S. Ct. 1148, 1151-52 (2019) ("To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" (quoting 42 U.S.C. § 405(g))). The Magistrate Judge did not suggest that this Court lacks the authority to order remand if it were to determine that the ALJ's findings were not supported by substantial evidence or were not reached through application of the correct legal standard. See Hancock, 667 F.3d at 472.

considering PA-C Morrison's medical opinion. With regard to supportability, the ALJ noted that PA-C Morrison's medical source statement was "inconsistent with [her] progress notes," which indicated that: Plaintiff had "an intact memory"; he had "an average IQ and fund of knowledge"; his "thought processes were goal directed and coherent"; he "did not endorse delusions or hallucinations"; and his "symptoms appeared to improve when not drinking and [when] taking his medications as prescribed, although he reported intermittent energy and sleep problems." R. 31. With regard to consistency, the ALJ noted that, although Plaintiff "reported problems with social functioning, [he] attended his medication and therapy sessions, attended AA meetings, interacted well with his friend and mother[,] . . . could leave the house[,] and, according to his testimony, enjoyed drives and walks in the park or beach." Id.

This discussion is sufficient to allow the Court to conduct a meaningful review of the ALJ's analysis. Notably, "the ALJ need not use any particular language or adhere to a particular format in issuing her decision." Todd A. v. Kijakazi, No. 3:20cv594, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021) (cleaned up). Thus, the "ALJ need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors." Id. Such is the case here. Although the ALJ did not signpost her discussion with the words

12

"supportability" and "consistency," she nonetheless provided sufficient analysis of those key factors, as outlined above.[7]

Similarly, the Court is not persuaded by Plaintiff's argument that both the ALJ and the Magistrate Judge cherry-picked or mischaracterized evidence from the record in evaluating the persuasiveness of PA-C Morrison's medical source statement. As the Magistrate Judge explained, it is true that, "[w]hen evaluating a medical opinion under [the applicable regulations], the ALJ cannot 'cherrypick[] facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'" ECF No. 21, at 31 (second alteration in original) (quoting Bilotta v. Saul, 850 F. App'x 162, 169 (4th Cir. 2021)). But that is not what the ALJ did in this case. Rather, the ALJ devoted two pages to detailing the history of Plaintiff's treatment by PA-C Morrison. R. 30-31. This fulsome discussion highlighted many of the very

---

[7] Moreover, the ALJ's decision must also be read and considered in its entirety. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (per curiam) ("Reading the ALJ's decision as a whole, substantial evidence supports the [ALJ's] finding at step three . . . [in light of] the ALJ's analysis at subsequent steps[.]"). The ALJ's supportability and consistency analysis follows from the ALJ's earlier, more fulsome discussion of these same issues. See, e.g., R. 28 (noting that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"); R. 28-29 (discussing Plaintiff's treatment records prior to being treated by PA-C Morrison), R. 30-31 (discussing PA-C Morrison's treatment records).

same treatment notes that Plaintiff asserts the ALJ "ignore[d]."[8] ECF No. 14, at 11.

In explaining why she was unpersuaded by PA Morrison's medical source statement — which found "either extreme or marked limits in [each of] the B criteria" — the ALJ identified the record evidence that led her to conclude that the medical opinion was inconsistent both with PA-C Morrison's own mental status findings and with the record as a whole. R. 31. Moreover, as the Commissioner highlighted in her motion for summary judgment, ECF No. 20, at 21-22, many of the treatment notes that Plaintiff characterizes as "favorable evidence" supporting PA-C Morrison's medical source statement are merely subjective statements that Plaintiff reported to PA-C Morrison, rather than her own observations or medical conclusions. See ECF No. 22, at 8-9; ECF No. 14, at 9-11 (highlighting concerns that Plaintiff reported, including shaky hands, racing heart, shortness of breath, lack of sleep, violent dreams, history of alcohol abuse, chronic pain, frequent worrying, low energy and motivation, and difficulty concentrating).

---

[8] Compare, e.g., ECF No. 14, at 9-10 ("Ms. Morrison's records also repeatedly documented depressed and anxious mood and impaired attention and concentration span[,] . . . shakiness in his hands, racing heart and shortness of breath[,] . . . lack of sleep[,] . . . violent dreams[,] . . . admission of self-medicating through alcoholism and his efforts to stop[,] . . . chronic pain from an injury in 2016 and a car accident in 2017") with R. 30-31 ("[T]he claimant told [PA Morrison] that . . . [h]e worried and had a racing heart and shortness of breath [and] . . . he had poor sleep with vivid dreams. . . . PA Morrison's examination revealed that the claimant . . . had a depressed and anxious mood . . . PA Morrison found the claimant with . . . alcohol dependence in remission.").

14

Regarding PA-C Morrison's own medical findings, her notes indicate that, during the intake examination, she found that Plaintiff had average intelligence, a good fund of knowledge, goal-directed and coherent thought processes, and an intact memory. R. 460. PA-C Morrison also found that Plaintiff's attention and concentration span was impaired and that his mood was depressed and anxious. Id. She diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and alcohol dependence in remission. Id. These findings remained generally consistent throughout Plaintiff's follow up appointments, although PA-C Morrison recorded improvements in Plaintiff's attention and concentration span on all but one occasion, and on all but two occasions, she recorded Plaintiff's mood as "mildly anxious and depressed" or simply "mildly anxious." R. 468-69, 471-72, 474-75, 477-78, 481, 483-84, 486-87. PA-C Morrison also recorded Plaintiff's own subjective reports regarding his general improvement, and at times regression, in mood and sleep. R. 468, 471, 474, 477, 480, 483, 486.

When analyzing the persuasiveness of PA-C Morrison's medical source statement, the ALJ appropriately focused on these medical findings, as relevant. Contrary to Plaintiff's arguments, the ALJ did not "cherry pick" from the record at all. Rather, as the Magistrate Judge discussed at greater length in the R&R, the ALJ highlighted how PA-C Morrison's medical source statement was

15

contradicted by her own medical conclusions (as recorded in her treatment notes) and by the weight of Plaintiff's medical record as a whole. The Court therefore overrules Plaintiff's objection that the Magistrate Judge erred with respect to the ALJ's evaluation of PA-C Morrison's medical source statement.

## IV. Conclusion

For the reasons explained above, the R&R is **ADOPTED**, ECF No. 21, Plaintiff's motion for summary judgment is **DENIED**, ECF No. 13, the Commissioner's motion for summary judgment is **GRANTED**, ECF No. 19, and the final decision of the Commissioner is **AFFIRMED**.

The Clerk is requested to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ MSD
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 18, 2023